Mr. Murmelstein? Yes. Good morning. May it please the court, my name is Stuart Murmelstein and I represent the appellate Michael Croyle in this appeal. This appeal involves a case of child sexual abuse by a Catholic priest who was providing Catholic clergy services at Tripler Army Hospital in Hawaii. The claim in this case is under the Federal Tort Claims Act and this appeal concerns a very narrow issue and that is the application of the discretionary function exception to the Federal Tort Claims Act. So the question before the court is specifically whether the government's action or decision in this case in maintaining Mark Mattson who was providing clergy services to the Tripler Catholic community and its families including children with notice that he was a child abuser, a pedophile. Notice, you mean the charges and allegations? Is that what you mean? Tell me what you mean by the notice because that's a dark spot between the two briefs. Yes. So when you say notice what do you mean? Yes, I mean the conduct or I'm sorry, yes, what is alleged in the complaint is notice of the danger that was presented by Mark Mattson. Notice is a conclusion, right? Did you mention the allegations that have been brought against him previously? Yes, there were multiple allegations against him. Are those in the complaint? That's a simple question I'm asking. Yes, they are and they're also reflected in the district court's decision. Proceed. Okay. So the question is, is the government's action or decision to maintain Mark Mattson on the premises providing services to children and families, is that a plausible policy choice? And the test under the U.S. versus Gobert case of the U.S. Supreme Court is whether a government decision is grounded in or susceptible to considerations of social, economic, or political policy. And if they are, then they're protected by the discretionary function exception. If such policy considerations are not plausible, then the government, then the discretionary function exception does not apply. Now, we submit in this case that they're a decision to maintain a pedophile on premises as a priest providing services to children is not a decision that could... Well, you just blew by actual or accused. The decision to retain a pedophile in this situation, that requires government knowledge that he was an actual or a convicted pedophile. Are you claiming the government knew that? And I don't know that there's any basis for that in the record. The complaint alleges it. Now, what the district judge did is the district judge correctly assumed that the government had noticed based on the allegations in our case. The motion that was filed... That's not notice of pedophile. You keep presuming... You jump over the presumption of innocence, so to speak. I understand. You can't do that because that's where the discretionary policy issue comes into play. The issue that you're raising, which is notice. Did the government have notice that Mark Baskin posed a danger? That's a factual issue that goes to the merits. This was a Rule 12b1 motion brought by the government that was tailored to avoid any encroachment upon the merits. And the reason... There was a good reason for them doing so. They didn't want to raise an issue that went to the merits. But what's the fact that's assumed? That's what fact assumed for purposes of the motion. I mean, in 12b1, you can have a trial on a threshold issue under 12b1. That wasn't done here. It might need to be done, but instead it was taken on assumed facts. But what was the assumed knowledge? The assumed knowledge is they had notice of his of charges. He didn't have any history... Well, the policy consideration comes in, and you say, oh, well, it's irrelevant because he wasn't their employee, or it was irrelevant because it was such a serious matter, and so forth. But the policy is, when does suspicion warrant warning the outside world and thereby destroying the reputation and employability of a person because of the possibility or suspicion or prior unproven accusations? That's where the discretionary function is. That's the issue here, and you won't deal with it. Well, Your Honor, they had notice of charges. Again, that's alleged. That's the assumption. They had notice of what he had been accused of. The fact that it hasn't been proven, I mean, they're still on notice of the danger. The critical point is their notice that this man who is on their premises with a risk, is at a danger of molesting children. The reason that they have notice of this risk is based on his history, which is alleged in the complaint. So it's not a matter of are these allegations proven, it's did they have notice of the risk. That's ultimately, that question of which this court should not address. So then the question becomes, if they hadn't, the government had notice of this risk, of the danger of his sexual proclivity, meaning he had a tendency to have a sexual interest in children. If they had notice of this, is there any policy choice that's plausible that would allow him to be retained in this position where he would be ministering the children? I know you took time in your brief with the Hensley case, but as you're about halfway done here, tell us on Hensley, because Hensley, they know the child is a, that child, they know is bad and they put him in a home with other children. What do you think about the Hensley, our Hensley case? The Hensley case is distinguishable. The reason is, in that case, the government agency was this Child Protective Services Agency on the reservation. And you had a person that the agency was providing services to. They had a duty to this child who was also a sexual abuse perpetrator. So that problem, that they had a duty to him of confidentiality, a duty to act in his best interest. So that created the policy choice. So that's a fairly unique circumstance. You don't think, well, the government is going to get sued if it does what you want to say it had to do. And it turns out that the allegations were misreported, invented, untrue, or so forth. The next, the next lawsuit is going to come from this priest against the government for destroying my career by publicizing untrue, as fact, untrue allegations about me. Now you can say there was no duty, no employee employment duty to that priest. There's a governmental duty not to do that to anybody. Well, in this case, I mean, if you look at the actual facts here, they, in the same time frame, they actually did terminate the contract under which this priest operated. The contract was with the Theotene's Order. And they terminated that contract based on an allegation of petty theft that he had misappropriated bulletin covers. What does that have to do with anything? Well, it has to do with it because they are, like any property owner, again, subject to state law under the FTCA. They have a duty to not have a dangerous condition on their premises, whether that dangerous condition is in the body of a person who poses a risk to children. And there's nothing to indicate or to, it's not necessarily compelled that they have to out him. And I realize we do have a failure to warn allegations, but it's maintaining him on the premises really is the allegation that the wrong or the decision that was made in this case, the act that's alleged, that is not subject to policy consideration. It's not necessarily imperative that they have broadcast or ruined his future. He could have come back with the Theotene's Order and they could have dealt with him. I think ultimately that would have happened, but he then subsequently got arrested. In any event- Two or three times you've referred to the government premises and claim, I don't understand the relationship you're suggesting. Well, that's the underlying claim under the Federal Tort Claims Act, is that this priest was on their premises. They have noticed, the government has noticed that he's a risk of abusing children. The children who are on the premises, who are being provided services on the premises, the government should not allow this dangerous man to have access to them. Is that Hawaii law? Is that what you're invoking? Yes. I mean, in fact, that's a fairly consistent common law or negligence law throughout the country. If you're on, the court may, I'll reserve my time. Thank you. Mr. Aguilar? May it please the court, Daniel Aguilar for the United States. Under the Federal Tort Claims Act, courts lack jurisdiction over tort claims against the United States when the claim is based upon a discretionary function, quote, whether or not the discretion involved be abused. Plaintiff has alleged the United States failed to conduct a background check on Mark Mattson, a contract priest at Tripler Army Hospital, and that the United States should have known or knew about abuse allegations against Mattson. Well, go slowly with me. I've not looked at the complaint, I'll confess. But if you look at Judge 7, page 7 of Judge Autry's opinion, the district judge's opinion here, he acts like there were established facts about sexual abuse before he came there. And he recites that, and I know how he does his opinion. He says even if they hadn't noticed this. But what does, I thought the way it's written in the district judge's order, I thought it was allegations. That's correct. And I was trying to focus on that allegations. This is paragraph 27 of the complaint. It's on page 13 of the appendix. And there it states various allegations of abuse. It notes that on one occasion he was arrested, and on another occasion there was a trial. Mark Mattson, in his declaration, that's in the record at page 353, stated that in one of those he was acquitted, and in the other case it was dismissed. Plaintiff hasn't alleged that. So page 7, you know what I'm referring to in the district court's order, top of page 7? It has prior to, which means before, before his time there, Mattson sexually abused several minors. That's what the sentence says. It sounds like everybody knew that. So as I understood the district court's opinion, the district court started the opinion by laying out that these are the allegations in the complaint which I will now address. The first one is the allegation in the complaint, which is paragraph 27. To the extent that he's saying that the government had actual knowledge of the truth of these allegations, I think that runs into two problems. The first is that paragraph 41 of the complaint alleges that the government didn't conduct a background check, and that in itself was negligent because you didn't take steps to find out even about these allegations. So plaintiff is alleging that we didn't even do a background check to learn of these in the first place. The second is that the complaint itself doesn't allege any mechanism outside of the background check that the government didn't conduct and the ecclesiastical endorsement that we received. And to receive that ecclesiastical endorsement, you can't have a criminal conviction on your record. So I think there's a problem under Iqbal or Twombly if you're saying that we knew the truth of these allegations, the complaint on itself doesn't allege a viable mechanism for that. Even assuming that that's true, that we knew of the truth of these allegations, I think this court's precedent holds that this is still susceptible to this discretionary function analysis. And particularly Hensley noted that even in a case where you know the truth of the sexual abuse conduct of the person, the decision on to warn about that or to take other action is still susceptible to policy considerations. And here plaintiff in his opening argument has focused on the claim that the United States was negligent in failing to keep Mattson on the premises. What that is an allegation of, I mean what I think plaintiff's argument is, is that as soon as the government knew or should know of an abuse by an independent contractor and the contractor doesn't work with children as part of the contract but is teaching a catechism class outside of his work for the government, the government must fire that person. I think that is susceptible to policy analysis in this situation because of the particular context here. Tripler Army Hospital had no Catholic priest on staff. It contracted with the Theotene Fathers to provide a Catholic priest. Mark Mattson was the only Theotene Father in Hawaii where the hospital is located. The hospital services thousands of service members and veterans. It is a tertiary hospital that provides specialized care, oncology for instance. To be able, once the Army has chosen to engage in a program of having chaplains and priests and pastors and other religious heads in order to minister to the sick and dying, it is susceptible to policy analysis that if we fire this person who's the only Catholic priest we have a contract for nearby, we are going to lose the services of the sacraments of communion of last rites to people who need it in very strenuous times. That certainly is susceptible to policy consideration. Indeed, when the government noted that there were problems with the contract, that you weren't showing up all of the time or taking leave without absence, it explained that these were really important considerations that we need you available 24-7. That was specified in his contract to be constantly available for the patients at the hospital. And going to Judge Loken's point, particularly I think what to do because there's no allegation and I think there's no plausible allegation that the United States could have known the veracity of these allegations. We'll continue on the assumption that we knew or should have known about them then. But then there's a further question about what to do about publicly disclosing. And usually a decision, as this court recognized in Hensley, a decision about whether or not to warrant to publicly disclose these allegations is the kind of thing that is susceptible to policy analysis. And if the allegations turn out to be unfounded, it is susceptible to policy analysis about have we done harm to the Catholic community here in taking away their confidence in this priest? Have we done potential harm to the priest if the allegations turn out to be untrue? This isn't to say that a decision on how to weigh all of these competing factors was necessarily correct here. That would go to a trial on the merits, on negligence. But what Congress has set forth in the discretionary function exception is once there are all of these competing policy considerations, that is the kind of decision that the United States has not waived its sovereign immunity on and is not liable for and towards. I'm happy to answer any questions. The complaint even mentioned the ecclesiastical endorsement from the archdiocese of military services. I don't believe that the complaint alleged that. It is in the record at page 33. And I believe it was discussed. How did it get in the record? The district court did not hold a factual hearing on this, right? That's an option. Or did the district court hold a factual hearing? So the district court allowed the parties to take limited jurisdictional discovery. One of plaintiff's theories for liability was that the one that the United States failed to conduct a I believe initially alleged that we had a mandatory duty to conduct a background check. What the army regulation stated is that we usually don't do background checks. We only do that if you are conducting childcare services. What we instead do is we receive an ecclesiastical endorsement from your religious organization that says you are a priest in good standing and you can administer Catholic sacraments and conduct mass. And so that's how it came in is in saying that at step one of the discretionary function analysis, there was no mandatory duty or policy. Instead, we relied on the ecclesiastical. So a better question I should have asked you is, is the endorsement in the record? Yes, that's at page 33. Okay. And does it include the question, have you ever been convicted of a felony? Does that show? No, that was explained in Mark Mattson's declaration at page 353, that the process of obtaining the ecclesiastical endorsement requires... Includes that question, but the record? Correct. I believe that there are some army regulations that we cite in our brief that explain that the ecclesiastical endorsement requires that there be no convictions in military or civil court. So this was not developed necessarily as a factual matter in the case, but the underground back work of the army regulations stated that the army knew that this is what the ecclesiastical endorsement meant. If the court has no further questions. Thank you. Thank you for rebuttal. Thank you. I would like to address this point that there's an inherent policy choice involved, and that's the question. Is there a policy choice inherent in the actor decision at issue? And the notion that, well, it's hard to come by a Catholic priest and there's a priest shortage is the statement or argument made both the conclusion of the district court and argued by the government. The problem here is that there's really nothing in the record to indicate that there's a priest shortage. I mean, it's something that is essentially taken from thin air. I note that there is indicated in the record of evidence that of Mark Mattson's termination, which was again for this $100 petty theft. So it was fairly easy to decide to terminate the contract of the theathian fathers and dispense with Mattson as a factual matter in the record. And there's no evidence. Does the record show whether a deacon or priest did his services after he was terminated or not? The record does not. Okay. Thank you. Proceed. I don't know that we had a witness to that. And I also point out that there's a couple of appellate decisions that are cited in our papers. The Dube case out of the First Circuit and the Stout case out of the Third Circuit, which is a very recent decision. And the question that those cases. Are you citing cases that are not in your brief? They are in my brief. They are. Okay. Dube in the First Circuit, Stout in the Third Circuit. And the question is, is there a plausible policy choice that would allow a foreseeable assault to occur? And the answer is no. Particularly in the Dube case, the court confined its decision to where the government is acting in a capacity analogous to a private sector entity. So here you have a hospital, you know, entity providing religious services. And if the actor decision, according to Dube, is one that by its nature is a breach of duty of care. And, you know, having notice of a priest's sexual proclivities, placing children in danger, that is, by its nature, a breach of the duty of care. Then that's not susceptible to policy choice. That is a situation that the discretionary function exception would not be applicable. I'm out of time. Thank you for your consideration. Thank you, counsel. The case has been effectively briefed and argued, and we will take it under advisement.